IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Robert Eichelberger,<br><br>    Plaintiff,<br><br>vs.<br><br>Champion Aerospace, Inc.,<br><br>    Defendant. | Civil Action No. 8:08-2990-HFF-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Doc. 36.] The plaintiff has pled claims for discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et. seq.* and the South Carolina Human Affairs Law. The plaintiff alleges that the defendant discriminated against him on the basis of his age insofar as it rejected his application for a job which it eventually gave to a substantially younger individual.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The defendant is a global manufacturer and producer of aviation and aerospace engine technologies. (Rettberg decl. ¶ 2.) In 2007, the defendant decided to search for a full-time Sales Engineer to service the Asian market. (Rettberg Decl. ¶ 5.) The defendant

hired Matteson Partners, Inc., an executive search firm in Atlanta, to conduct the search, to prescreen candidates, and to refer Matteson Partners' top candidates to the defendant for final consideration. (McDonald Decl. ¶¶ 2-4.)

Wayne McDonald, managing partner of Matteson Partners, visited the defendant's headquarters to meet with Harvey Rettberg, the defendant's Director of Sales & Marketing, and other top executives at the defendant, so that he could gain a better understanding of the scope and requirements for the position. (McDonald Decl. ¶ 1, 4.) There is some dispute between the parties as to the level of involvement the defendant had in preparing the job description that was posted in the listing advertised by Matteson Partners for the Sales Engineer job. It is the defendant's position that the posting was authored by Matteson Partners and that the initial determination as to whether candidates satisfied such criteria was Matteson's alone. As will be discussed, the plaintiff has submitted evidence that the substance of the job posting came from the defendant.

Matteson Partners received the plaintiff's resume through Careerbuilder.com. (Eichelberger Dep. at 84, 90-91; Eichelberger Dep. ex. 6; McDonald Decl. ¶ 7.) The plaintiff was 65 years old at the time of his application. (Pl. Aff. at 1.) The plaintiff had previously worked for the defendant. (Eichelberger dep. 92-95.) The plaintiff contends that his prior employment with the defendant was consistent with the demands and responsibilities of the Sales Engineer position listed through Matteson Partners. The defendant emphasizes that, at the time he submitted his application, the plaintiff had been performing non-relevant work for nearly seven years. (Eichelberger Dep. Ex. 6; McDonald

2

Decl. ¶ 7.)

The plaintiff's application was rejected. The circumstances of that rejection is a matter of some debate between the parties and will be discussed further below. It is undisputed, however, that, on October 22, 2007, Jason Kelley, the defendant's human resources manager, sent the plaintiff an email advising him that he was not a suitable candidate for the position. (Eichelberger dep. 117-18; dep. ex. 7.) The defendant contends that the plaintiff was not qualified for the position because he had no sales experience in Asia and no experience with the type of highly engineered products at issue.

After the rejection of the plaintiff's application, the defendant represents that the Sales Engineer position was never filled. The plaintiff has presented evidence, however, that a new posting for a Product Manager position was posted after the Sales Engineer posting was withdrawn. (Pl. Ex. 9.) The description and qualifications of the new posting appear identical to that of the original Sales Engineer position. (See Pl. Ex. 2.) The defendant eventually hired an individual under the age of 40 for the Product Manager position. (Pl. Ex. 5 at 36; Pl. Ex. 10.)

The plaintiff contends he was rejected for the job because of his age.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

> there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the

4

granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

As stated, the plaintiff contends that he was rejected for an Asian Sales Engineer position on account of his *age* and that the position was eventually given to a younger individual outside the protected class.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of

5

employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[1]  In an age discrimination case, a plaintiff must prove that "but for" his employer's discriminatory intent, he would not have been fired or laid off.  *See Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir.1982); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1314 (4th Cir. 1993).  A plaintiff can meet this burden either through direct or indirect proof, or by invoking the Title VII, *McDonnell Douglas* scheme of proof. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir.1988).  The plaintiff has invoked the latter.

Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional

---

[1] The plaintiff has pled the same claim pursuant to the South Carolina Human Affairs Laws.  That claim is analyzed in accord with the ADEA.  *See Taylor v. Cummins Atlantic, Inc.*, 852 F. Supp. 1279, 1283 n.2 (D.S.C. 1994).

6

discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48.

The Court would make the general observation that the defendant has responded to the plaintiff's case in precisely the ways that might raise suspicions in the minds of jurors as to the real reasons for its decisions.

### A. *Prima Face* Case

To establish a *prima facie* case of age discrimination, the plaintiff must demonstrate that: (1) he was at least 40 years old; (2) that he was qualified for a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) that the position remained open and the employer continued to seek or accept applications from persons with his qualifications outside the protected class. *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995).

The defendant does not dispute that at the time of his application, the plaintiff was over 40 years of age. The defendant, however, rejects that the plaintiff was qualified for the position or that the position was ever filled by any other individual, younger or otherwise.

7

1. **Qualifications**

The defendant contends that the plaintiff was unqualified for the Sales Engineer position because it was looking for someone who had both sales experience in Asia and recent experience selling a highly engineered technical product. (Rettberg Dep. at 14.) The defendant has put forward evidence that it had made these requirements clear to Matteson Partners at the commencement of the search process. (Rettberg Dep. at 19; McDonald Decl. ¶ 8.) It is not really disputed that the plaintiff possessed neither qualification.

Notably, however, the job posting for the Sales Engineer position, both lengthy and detailed, included neither qualification. It read as follows:

> **Description:**
> Responsible for turbine Ignition system sales and program management activities for assigned accounts: domestic engine OEM's (original equipment manufacturers) and Asian airlines (not including Australia and New Zealand). Job functions include preparing and submitting sales proposals to OEMs and airlines, pricing analysis, monitoring competitive activity, and supporting management in sales and marketing analysis. Product training will be provided and support is available through an affective sales team environment. Sales growth is the primary measurement of success.
>
> Relocation is available within the USA.
>
> **Responsibilities:**
>
> - Accountable for sales growth and maintaining existing business of assigned accounts
> - Prepare and submit sales proposals to OEMs and airlines
> - Perform pricing analysis and monitor competitive activity
> - Support management in sales and marketing analysis
> - Negotiate sales and marketing contractual

- commitments with OEM's and airlines
- Provide weekly and monthly sales reports to management
- Develop positive relations with key customers
- Determine and implement strategic and/or tactical plans to win sales
- Ability to motivate and influence a diverse group of distributor
- Travel requirements will be approximately 40%
- Travel will include domestic OEM visits on a monthly basis, and multiple trips to Asia per year. Distributors located in the Asia region will also provide support to the airlines
- Provide technical clinics at customer facilities to increase product knowledge, and enhance brand loyalty
- Represent trade shows, conventions and seminars to maintain customer contact, increase brand exposure, and publicize new products and services
- Work with distributor sales reps to increase product knowledge and provide direct support

**Requirements**

Education and Requirements:

- Engineering BS or Business BA with business acumen and technical ability to understand the product line
- Sales experience desired, preferably in the aviation industry
- Customer interface experience, via sales or product support functions
- Program management and presentation experience
- Self starter
- Well developed written, verbal and presentation skills
- Well versed in standard office software such as MS Word, MS Excel, E-mail

(Pl. Ex. 2.)

The plaintiff has put forward evidence that his work experience meets all the

express criteria of the listing, as actually posted, and that he had previously held a similar position with the defendant. (See generally Pl. Aff.) Tracking the criteria in the section styled "Education and Requirements" of the job posting, the plaintiff's affidavit reflects the following relevant qualifications which would seem to create issues of fact as to whether he satisfies each: a business BA from the University of Maryland; 27 years of aviation sales experience; 27 years of customer interface experience; 23 years of presentation and management experience; and versed in computer usage including MS Word and email. (Compare Pl. Ex. 2 with Pl. Aff. at 3.) The plaintiff has also submitted evidence of strong written and verbal skills. (Pl. Aff. at 3-4.)

The defendant does not really contest that the plaintiff satisfies the job criteria as listed. Instead, the defendant contends that the job posting was prepared by Matteson Partners and does not reflect the defendant's real criteria, which included sales experience in Asia and with highly engineered technical products. At best, this is an issue of fact. In response to the defendant's insistence that the executive search firm was the real author of the posted criteria, the plaintiff has offered the testimony of Jason Kelley, the human resources manager, admitting that the actual job description and skills needed for the job were provided to Matteson Partners by the defendant. (Kelley Dep. at 12-13; Ex. 7 at 7.) While it is certainly true that it is the defendant's province, and not the plaintiff's, to set the qualifications for the position in question, *see Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir.2005), it seems that, at the *prima facie* stage, courts tend to limit their inquiry as to whether the plaintiff was qualified to an examination of the more

10

objective criteria in the job posting, *Weldon v. Kraft, Inc.*, 896 F.2d 793, 798-99 (3d Cir.1990). This is particularly appropriate, here, where there is evidence that the qualifications in that listing were, in fact, of the defendant's own design, (see Kelley Dep. at 12-13; Ex. 7 at 7) and yet, did not include any language regarding an absolute requirement of sales experience in Asia or with highly engineered products.[2]

Accordingly, the plaintiff has created issues of fact as to whether he was qualified for the position posted such that he has satisfied the second element of his *prima facie* case.

## 2. Position Filled by a Younger Individual

The defendant next contends that no issues of fact exist as to the fourth element of the plaintiff's *prima facie* case that the position remained open and the employer continued to seek or accept applications from persons with his qualifications outside the protected class. The defendant's simple and insistent response is that it "never filled" the position. (Def. Reply at 3.) What the defendant never offers, and only marginally deflects when raised in response by the plaintiff, *id.*, is that a separate Turbine Products Line Manager Position was posted after the Sales Engineer position was taken down and "never filled." Curiously, the posting for the new "Manager" position is literally a verbatim reproduction of the original posting for the Sales Engineer position. (Compare Pl. Ex. 2

---

[2] The Court would note that the additional criteria of Asia sales and product experience are reasonably implied in the sense that both such qualifications might make any given candidate preferable to another. The plain reading of the posting, however, would not reasonably suggest that a lack of such qualifications would render an applicant definitively *unqualified*.

with Pl. Ex. 9.) As far as the Court can tell, the postings are precisely identical. The defendant does not seem to contest that the postings are the same. (Def. Reply at 3 n.3.) Instead, the defendant represents that the follow-up questionnaire and interview for the manager job were differently tailored for the "new" position. All of this may very well be true. It seems fairly certain that a reasonable jury could disagree, however. Critically, the new position was, in fact, filled with by a much younger individual, under 40 years of age. (Pl. Ex. 5 at 36.) To the extent a jury finds that the new position is simply the old position reimagined, it would be entitled to conclude that the plaintiff had satisfied the fourth element of his *prima facie* case.

### B. Legitimate Non-Discriminatory Reason

In regards to the Sales Engineer position, the defendant has advanced an ambitious seven reasons for having rejected the plaintiff's application. The Court believes that it is precisely in the volume of reasons given that the defendant has made the plaintiff's case for him, to the extent one exists at all. The seven, non-discriminatory bases are as follows:

1. Matteson Partners, whom Champion hired to prescreen candidates, did not consider him to be qualified and eliminated him from further consideration;
2. He had no sales experience in Asia, nor had he ever been to Asia;
3. In the previous seven years, he had no sales experience with any highly technical or engineered product;
4. He falsified his resume;
5. He had no recent references;
6. The hiring manager, Harvey Rettberg, believed he had mismanaged accounts when he worked at Champion seven years earlier; and
7. Champion did not hire anyone into the position.

12

(Def. Mem. Supp. Summ. J. at 14.)

### C. Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reason for the rejection of his application was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43. As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144. More precisely, the plaintiff has presented a broad picture of the defendant's story as not credible for a series of irregularities in its account. The irregularities are suspicious both for what they expressly contradict and for what they tend to obscure. To the undersigned, they create issues of fact as to the real reason for the defendant's actions.

As initial matter, the defendant's insistence that the "new" Manager position is distinct from the position for which the plaintiff applied, almost on its own, raises the specter of pretext such that a jury could disbelieve the reasons the defendant has advanced. "[T]he trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves*, 503 U.S. at 143. It is entirely possible for the defendant to have intended, as it claims, that the new posting be for a different position than the one for Sales Engineer, originally posted. But, that is not the only interpretation of the events and the defendant's argument is so passively dismissive as to raise serious suspicions. In a single footnote, the defendant calls the plaintiff's "observation that

Matteson Partners' posting did not change when the position changed . . . undisputed and irrelevant." (Def. Reply at 3 n.3.) To the Court, it seems that nothing could be further from the truth. As discussed, the postings are literally identical. So one conceivable conclusion that a jury might reach would be that the defendant withdrew a position for which it had rejected an older applicant and then resubmitted it under a different title to avoid the accusation it had filled the position with an individual under 40 and substantially younger. The defendant relies on evidence that, although the posting remained the same, Matteson Partners had changed other levels of the hiring process to screen for a management level position and in this way the position was made distinct from the Sales Engineer position. (McDonald Decl. ¶ 12.) This is certainly a possible explanation. But, the defendant asks the Court to simply to accept the rationale. It seems that a jury should be permitted to question it.

Overall, the postings are a source of substantial confusion and misdirection. First, the defendant claims that the plaintiff was rejected for two essential qualifications of the job and, yet, neither of those qualifications were expressly included in the posting. Second, the defendant claims that a subsequent job posting, identical in every respect to the first, was, in fact, for a completely different position. In both instances, the defendant would ask a factfinder to take into account justifications not apparent from the face of those documents. It is certainly entitled to do so. But the defendant's plea does not eliminate the jury's right to reject those justifications, privately held by the defendant and which stand in some facial contradiction to a plain reading of the postings.

There are other points of inconsistency. The defendant also claims that Wayne McDonald was the individual for Matteson Partners who screened and reviewed the plaintiff's resume and rejected it. This point is essential to the defendant's position as to its non-discriminatory bases because the defendant contends that it was not actually the decisionmaker in regards to the plaintiff's application and, therefore, cannot be liable for any age discrimination. A few strange facts raise doubts about this claim. First, the defendant and McDonald contend that upon review of the plaintiff's resume McDonald, acting alone, immediately concluded that the plaintiff was not a "suitable candidate." (McDonald Decl. ¶ 7.) But, the plaintiff swears that he spoke with McDonald, after he had already reviewed the resume, and that McDonald was, in fact, enthusiastic about the plaintiff's application. (Pl. Aff. at 1.) McDonald may have simply been overly courteous on the phone; he also may have changed his story. It is an issue of fact. Second, the defendant contends that the plaintiff's wife called Harv Rettburg, Director of Sales for the defendant, inquiring about his application. The parties essentially agree as to the substance of the conversation that Rettburg informed the plaintiff's wife that the plaintiff was not qualified for the position. The plaintiff's wife, however, has sworn that it was, in fact, Rettburg that called her. (Pl. Aff. at 1.) Again, the dispute is relevant because the defendant's position on summary judgment is that it was not involved in the decision to reject the plaintiff's application. If Rettberg indeed initiated the phone call to expressly reject the plaintiff's application, then that fact would seem inconsistent with the defendant's representation that it had nothing to do with concluding the plaintiff was not qualified.

15

Lastly, after the Rettberg phone call, the plaintiff received an email from Jason Kelley, the defendant's Human Resource Director. The e-mail stated:

> Thanks for your recent inquiries regarding the open position in Sales at Champion Aerospace. Unfortunately, the requirements for the Asian Sales Engineer open position does not match your skills and experience. Bob, as we discuss in one of your previous visits, it's rare to come back to a company after the company has new ownership, especially in sales. Different companies require various and different skills sets for their departments.

(Pl. Ex. 4.) This email also evidences the defendant's specific involvement in the decision to reject his application, contrary to its position. The email itself also contains peculiar details, including the suggestion that Kelley and the plaintiff had talked on previous "visits" and that it had been remarked how rare it was to come back to a company after the company had new ownership. *Id*. The plaintiff contends that such prior conversations and exchanges never occurred, which would be consistent with the defendant's general position that Matteson Partners and not Champion made the decision. Such details have no significance accept in a situation where the defendant is trying to distance itself from any involvement in the consideration of the plaintiff for employment. (Pl. Resp. at 23-24.) Discrepancies over representations regarding the actual decisionmaker rightly implicate issues of pretext. *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d 846, 853 (4th Cir. 2001).

Maybe the most remarkable detail regarding the plaintiff's rejection is that Matteson Partners sent the defendant, for the first time, an email stating that it had rejected the plaintiff's application, 7 days after the plaintiff had filed an EEOC charge but 5 months after the plaintiff had actually been denied the job, by the defendant. (Pl. Ex. 11.) A jury might

16

reasonably conclude that this email was intended to retroactively establish the source of the decision not to hire the plaintiff in a way that distanced the defendant from it.

Finally, the defendant has offered two post-hoc rationalizations for its decision, although their post-hoc nature has only been subtly conceded. The defendant contends that the plaintiff falsified his resume by claiming he was still employed at a job from which he had been terminated two years earlier and that his application had no references. The defendant contends that "either of these deficiencies ***would have*** independently disqualified a candidate from further consideration." (Def. Reply at 2 (emphasis added); McDonald Decl. ¶¶ 10-11.) Notably, however, these were not justifications actually relied upon by the defendant at the time the plaintiff's application was rejected and their inclusion now creates negative inferences. A factfinder is reasonably permitted to "infer from the late appearance of . . . current justification[s] that [they are] a post-hoc rationale, [and] not a legitimate explanation for" the original decision. *Sears Roebuck and Co.*, 243 F.3d at 852-53. If the plaintiff was not qualified for the job, even based on reasons only the defendant held privately or not quite express, the simplest and most effective course would have been to stand on those. Dodging responsibility for the decision, and otherwise advancing a sweeping spectrum of bases for it, has only tended to muddy the waters of the defendant's non-discriminatory explanation.

To many of these points, the defendant has made little or no response. This is not a criticism; it may simply deem the matters peripheral. The Court, however, is persuaded that their effect, in total, is probative.

17

The Court does not know the truth of the matter. The above inconsistencies might simply be a parade of administrative accidents and regrettable mis-remembrances. But, such a tapestry of irregularities and shifting explanations in the defendant's story is sufficient evidence of pretext to survive summary judgment. *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 296 (4th Cir. 2009) ("Dotson put on sufficient evidence of weaknesses and inconsistencies in Pfizer's account of its decision to fire him for a jury to find."); *Sears Roebuck and Co.*, 243 F.3d at 852-53; *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir.1994) (noting a plaintiff can succeed in proving pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."). Moreover, as the plaintiff contends, rejection of even some of the reasons will permit the trier of fact to conclude that the remaining reasons were interjected as a pretext as well. *See Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 733 (4th Cir. 1996).

The Court does not so conclude simply as a technical matter. For the Court, the evidence really implies some degree of incredibility and obfuscation. The defendant's explanation on summary judgment simply tries too hard. If the plaintiff was really unqualified for the reasons alleged – lack of experience in Asia and within highly engineered equipment, then he had no real rejoinder. It is only in what appears to be the defendant's overreaching approach that it has opened the door to serious misgiving.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion for summary judgment [Doc. 36] be DENIED.

IT IS SO RECOMMENDED.

                                        s/Bruce H. Hendricks
                                        United States Magistrate Judge

December 22, 2009
Greenville, South Carolina.